JEAN-PAUL CIARDULLO (CA BAR 248170)
Foley & Lardner LLP
555 South Flower Street, Suite 3300
Los Angeles, CA 90071
Phone: (213) 972-4500
Fax:    (213) 486-0065
jciardullo@foley.com

CALEB KRUCKENBERG
Capitol Law Group PLLC
800 Maine Ave. SW, Suite 200
Washington DC 20024
Phone: (202) 964-6466
caleb@capitol.law
*Pro Hac Vice* Petition Forthcoming

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MA KA LAM<br><br>  *Plaintiff*,<br>  v.<br><br>RISE HUGE CORPORATION LTD., and TWIST BIOSCIENCE CORP.<br><br>  *Defendants*. | Case No.: 3:22-cv-6094<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff, Ma Ka Lam, submits the following Complaint for declaratory relief:

**INTRODUCTION**

Ms. Ma brings this action to recover shares she purchased in Twist Bioscience Corp. ("Twist"), which a foreign arbitration panel concluded are rightfully hers. Ms. Ma is a sophisticated early investor in Twist, and through her own research and personal relationships with Twist's executives, invested nearly $10 million dollars in the company in 2017. Acting in part on familial loyalty, Ms. Ma entered an oral contract with Rise Huge Corporation Ltd. ("Rise Huge"), a company run by a once-respected friend of Ms. Ma's parents, to help facilitate her purchase of the stock. Ms. Ma entrusted Rise Huge to purchase the shares as a nominee, with the explicit

understanding that Ms. Ma would retain ownership and would be entitled to have the shares re-issued in her name at her request. Ms. Ma then purchased 4,427,459 shares of Series D Preferred Stock in Twist (the "2017 Twist Investment"), using Rise Huge as a nominee owner. Since that early investment, Twist has gone public, and Ms. Ma's shares have dramatically risen in value. Unfortunately, familial loyalty has proven to be a one-way street. Instead of returning Ms. Ma's shares at her request, Rise Huge disclaimed Ms. Ma's entire interest, and has refused to return either the shares or Ms. Ma's investment.

After extensive litigation a panel of arbitrators in Hong Kong, China concluded that Ms. Ma is, in fact, the true record owner of the relevant shares, as well as the beneficial owner of a separate investment from 2018 that is not directly at issue here. They said, "Having considered the evidence on this issue, the Tribunal has concluded that the beneficial interest in the 2017 Twist Investment lay exclusively with Ms. Ma[.]" Yet Twist will not reissue the shares in Ms. Ma's name without direction by this Court. Accordingly, Ms. Ma now seeks confirmation of the international arbitration award against Rise Huge, and a declaratory judgment directing Twist to reissue the shares in Ms. Ma's name.

**PARTIES**

1. Plaintiff, Ma Ka Lam, is a natural person who resides in the Peoples Republic of China.

2. Defendant Rise Huge Corporation Ltd. is a private limited company registered in Hong Kong, China.

3. Defendant Twist Bioscience Corp. is a public corporation incorporated in the state of Delaware with its principal place of business in San Mateo County, California.

**JURISDICTION AND VENUE**

4. This Court has federal question jurisdiction to confirm the arbitration award against Defendant Rise Huge pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York Convention), as incorporated into 9 U.S.C. §§ 201, 203, 207.

5. This Court has supplemental jurisdiction to issue a declaratory judgment concerning Defendant Twist pursuant to 28 U.S.C. § 1367(a), 28 U.S.C. § 2201 and Cal. Civ. Code § 1060,

because the ownership interests that were determined by the arbitration award are so related as to the declaration of true ownership sought by Plaintiff against Defendant Twist that they form part of the same case or controversy.

6. Venue is proper pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(b), as Defendant Rise Huge does not reside in any federal district, but is subject to personal jurisdiction in this district, a substantial part of the events giving rise to the claim occurred in this district because the agreements giving rise to the claims were executed in this district, and Defendant Twist is located in this district.

7. Specifically, Defendant Rise Huge entered into a written Stock Purchase Agreement with Defendant Twist in this district, and Defendant Twist resides in this district.

8. In addition, a declaration of the true ownership interest in the relevant stock would result in the re-issuance of the stock by Defendant Twist in this district.

9. This Court has personal jurisdiction over Defendants because Defendant Twist resides in this district and Defendant Rise Huge executed a Stock Purchase Agreement with Defendant Twist in this district, which gives rise to this action. *See* Cal. Code Civ. Proc. § 410.10; *Gilmore Bank v. AsiaTrust New Zealand Ltd.*, 168 Cal. Rptr. 3d 525, 535 (Cal. Ct. App. 4th Dist. 2014) (foreign entity was properly subject to California jurisdiction because it executed an agreement with a California resident); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1286 n. 3 (9th Cir. 1977) (Rule 410.10 is co-extensive with federal due process clause).

**FACTS**

10. Ms. Ma, is an investor residing in China, with significant investments in the healthcare sector.

11. Ms. Ma's parents are the founders of Kangmei Pharmaceutical Co. Ltd., a listed Chinese healthcare company. They are well-known investors in China.

12. In around February 2017 GF Xinde Investment Management Co., Ltd ("GF Xinde") introduced Ms. Ma to the potential to invest in Defendant Twist, which was then engaged in a Series D+ round of fundraising.

COMPLAINT FOR DECLARATORY RELIEF

13. In March 2017 Ms. Ma met with key members of Twist management, including Chief Executive Officer Dr. Emily Leproust and Siyuan Chen, Twist's Chief Technology Officer, in Guangzhou, China. At the meeting Ms. Ma discussed the possibility of her investing in Twist.

14. On March 22, 2017, Ms. Mai Xiaoying, an Investment Director of GF Xinde, sent Twist's then-General Counsel, Mark Daniels, a request on behalf of Ms. Ma for a non-disclosure agreement from Twist for the purpose of due diligence.

15. In an email sent on April 3, 2017, to Dr. Leproust, Ms. Mai updated Twist concerning the potential investment, and noted that Ms. Ma hoped to "invest under her own name" in the shares.

16. On April 5, 2017, Ms. Ma also returned a signed non-disclosure agreement to Twist, which she signed in her individual capacity.

17. In April 2017 Ms. Ma learned that the remaining investment quota in the Series D+ round fundraising was US$9.5 million. Ms. Ma was concerned that she would not be able to gain quick access to enough U.S. currency to purchase the Twist shares in her own name.

18. Ms. Ma was then introduced by her mother, Madam Xu Dongjin, to Mr. Chan Siu Muk, who together with his brother Mr. Chen Shaoan ("Chen Brothers"), were the sole shareholders of Defendant Rise Huge. The Chen Brothers' business largely involved providing foreign currency exchange services to Chinese businesses and high net worth individuals.

19. At that time, Ms. Ma's parents had substantial prior dealings with the Chen Brothers, and these two Teochew families had a close business relationship, although Ms. Ma herself was not familiar with the details.

20. After learning the urgency of this investment from Ms. Ma, Madam Xu wished to help her daughter and proceeded to approach Mr. Chan to check that he had readily available US dollars in Hong Kong, China, that Madam Xu could purchase/exchange, and also regarding the possibility of using one of Mr. Chan's off-shore company to hold the investment as Ms. Ma's agent/nominee (this off-shore company later turned out to be Rise Huge).

21. Following Madam Xu's communication with Mr. Chan, Ms. Ma also met with Mr. Chan in around April 2017 in Shenzhen China to discuss these matters. Mr. Chan assured Ms. Ma

that Rise Huge is a shell corporate entity controlled by the Chen Brothers with no real operations and trading activities.

22. These currency exchange and nominee arrangements were orally agreed based on the Teochew custom that people deal with each other based on personal relationship and trust. There was no formal written agreement in this regard.

23. Beyond providing U.S. currency exchange and an investment vehicle, the Chen Brothers and Rise Huge played no role whatsoever in deliberating over the decision to invest in Twist. Mr. Chan also never communicated directly with any representative of Twist. Mr. Chan was not even aware that the proposed investment was in Twist—he merely understood that Rise Huge would be a nominee owner for shares in some company.

24. In late April 2017 Ms. Ma confirmed to Defendant Twist that she would invest in the Series D+ round but would do so using Rise Huge.

25. On May 2, 2017, Twist's counsel sent a signature package to Ms. Ma for Rise Huge to execute. Twist's counsel has never communicated directly with either Rise Huge or the Chen Brothers.

26. Two weeks later, Twist sent Ms. Ma a draft capital call notice and informed her that the deadline for capital injection would be May 31, 2017.

27. On May 29, 2017, Rise Huge transferred US$9,499,998.78 to Twist's outside counsel for the Twist Bioscience Corporation Series D+ financing.

28. Prior to that, on around May 23, 2017, Ms. Ma, via her parents' company, Puning Jinxin Pawn Brokerage Co., Ltd, provided RMB 66,690,000 to Mr. Chan to purchase such US dollars.

29. At the time RMB 66,690,000 equated to US$9,714,011.41, and the surplus of approximately US$214,012.63 was a service fee paid to Rise Huge.

30. Mr. Chan signed the signature page of the Stock Purchase Agreement on behalf of Rise Huge as Ms. Ma's agent/nominee. With Mr. Chan's signature, Ms. Ma returned the signed signature page to Twist's counsel, who then provided Ms. Ma with the fully executed Stock Purchase Agreement.

COMPLAINT FOR DECLARATORY RELIEF

31. Acting through AST, its transfer agent, Twist sent certificate number PD-96, representing 4,427,459 shares of Series D Preferred Stock, dated May 30, 2017 (the "2017 Twist Investment"), to Rise Huge. **Exhibit A.**

32. Rise Huge then provided the original certificate to Ms. Ma for safekeeping. Ms. Ma still possesses the original certificate.

33. In 2018 Ms. Ma made a second investment in Twist, this time through a fund called Ever Alpha Fund L.P. (in which she was one of the limited partners), managed by the general partner Ever Glory Limited. Once again, she used Rise Huge as a nominee for her investment. Through this new fund, Ms. Ma invested approximately US$35 million in Twist ("2018 Twist Investment"). As before, Ms. Ma purchased such US dollars from Mr. Chan with an added service fee using equivalent RMB in Mainland China.

34. Since March 2020, Mr. Chan falsely asserted ownership of both of Ms. Ma's investments in Twist, claiming that Rise Huge, which he controlled, was the true owner of all of the shares.

35. On August 10, 2020, Rise Huge commenced an arbitration proceeding administered by the Hong Kong International Arbitration Center against Ever Glory Limited and Ever Alpha Fund L.P., seeking a distribution of Twist shares from the fund partners. Ms. Ma joined that arbitration in September 2020, to assert her individual ownership interests in the Twist shares that were part of that investment, as well as the 2017 Twist Investment.

36. On June 8, 2022, the arbitration panel ruled in both the fund and Ms. Ma's favor. **Exhibit B.**

37. The 106-page arbitration award recounted in detail how Ms. Ma and, later, Ever Alpha had made the two investments in Twist, one in 2017 and one in 2018, using Rise Huge merely as a nominee.

38. Before the panel Ms. Ma argued that she was the true owner of the 2017 Twist Investment, and Rise Huge had merely been a nominee. **Exhibit B at ¶ 22.**

39. Rise Huge, in response, claimed that Xu Dongjin, Ms. Ma's mother, "had been the investor in the 2017 Twist Investment," and that Madam Xu had entered a "Settlement-in-Kind

[with Rise Huge] to have included the transfer from Madam Xu to the Chen Brothers of her alleged beneficial ownership of the 2017 Twist Investment." *Id*. at ¶ 24.

40. In its findings of fact, the panel rejected Rise Huge's arguments entirely. *See id.* at ¶¶ 284, 260. In its final award it "declare[d] that Ms. Ma Ka Lam … and not Rise Huge, is the true principal and true party to the [2018 Twist Investment]," which was the primary contention before the panel. *Id.* at ¶ 284. The panel therefore recognized that Ms. Ma was the beneficial owner of the 2018 Twist Investment, while the fund, Ever Alpha, was the true record owner. *Id.*

41. The arbitrators also issued final factual findings concerning the 2017 Twist Investment. *See id.* at ¶ 260. Notably, the arbitrators wrote, "Having considered the evidence on this issue, the Tribunal has concluded that the beneficial interest in the 2017 Twist Investment lay exclusively with Ms. Ma[.]" *Id.* Initially, the arbitrators rejected Rise Huge's assertion that Madam Xu had original ownership of the 2017 Twist investment, and also rejected the claim that Madam Xu had entered into any settlement-in-kind with the Chen Brothers transferring that ownership to them. *See id.* at ¶ 259. Moreover, the arbitrators found that Ms. Ma had invested in Twist in 2017 in her own capacity, that all evidence (including the full course of dealings between all parties) showed that Ms. Ma was the true owner of the shares, and that "the 2017 Twist Investment belonged to her." *Id.* at ¶ 260(5). Mr. Chan only signed the relevant documents on behalf of Rise Huge based on Ms. Ma's instructions, but the "beneficial ownership of the 2017 Twist investment lay exclusively with Ms. Ma." *Id.* at ¶ 260(8). Finally, the investment advisory fee paid to GF Xinde by Rise Huge after the purchase of the 2017 Twist Investment "was funded by the proceeds of sale" of another investment of Ms. Ma's, "an investment in which this Tribunal finds that neither Madam Xu, nor the [Chen] Brothers had any interest." *Id*.

42. Ms. Ma has demanded that Defendant Rise Huge return the 2017 Twist Investment to her control, and direct Twist to reissue them in her name, but Rise Huge has refused.

43. On July 5, 2022, Ms. Ma sent Defendant Twist a formal demand that it re-issue the 2017 Twist Investment in her name, in recognition of the arbitration award. **Exhibit C.**

44. On July 12, 2022, counsel for Defendant Twist met with Ms. Ma's counsel.

45. During the meeting, counsel for Defendant Twist informed Ms. Ma's counsel that the 2017 Twist Investment would not be reissued absent an order from a court of competent jurisdiction, because Defendant Twist could otherwise face potential liability to any record owner of the shares.

## COUNT I – CONFIRMATION OF ARBITRATION AWARD
## PLAINTIFF V. DEFENDANT RISE HUGE

46. Plaintiff adopts and reasserts the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

47. The New York Convention to which the United States is a party, governs "the recognition and enforcement of arbitral awards made in the territory of" a foreign state. New York Convention, art. I(1).

48. The United States codified its Convention obligations in the Convention Act, 9 U.S.C. §§ 201–08.

49. "A court must confirm a foreign arbitral award unless the party resisting enforcement meets its substantial burden of proving one of seven narrowly interpreted defenses." *Castro v. Tri Marine Fish Co. LLC*, 921 F.3d 766, 773 (9th Cir. 2019); *see also* 9 U.S.C. § 207 (incorporating the Convention's defenses); New York Convention, art. V (listing defenses).

50. "The judicial role in this process is circumscribed: Confirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Castro*, 921 F.3d at 773.

51. On June 8, 2022, an arbitration panel sitting at the Hong Kong International Arbitration Center concluded that Plaintiff, and not Defendant Rise Huge, is the true beneficial owner of the 2017 Twist Investment. ***See* Exhibit B at ¶¶ 259-60.**

52. While the panel also determined the true ownership of the separate 2018 Twist Investment, that conclusion is not subject to this confirmation action as it relates to non-party Ever Alpha as the true record owner.

53. The arbitration award has not been set aside or modified, and none of the limited defenses available to Defendant Rise Huge are applicable here.

54. WHEREFORE, this Court should confirm the arbitration award against Defendant Rise Huge in its entirety, and specifically order that Plaintiff, not Defendant Rise Huge, is the true beneficial owner of the 2017 Twist Investment.

**COUNT II – DECLARATORY JUDGMENT**
**PLAINTIFF V. DEFENDANT TWIST**

55. Plaintiff adopts and reasserts the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

56. Plaintiff is the true owner of the 2017 Twist Investment.

57. Plaintiff retains legal title to the 2017 Twist Investment yet an actual controversy exists concerning the legal rights and duties of Defendant Twist.

58. Specifically, Plaintiff demanded that Defendant Twist reissue the shares in Plaintiff's name following issuance of the arbitration award, but Defendant Twist refused to do so.

59. Unless Defendant Twist reissues the shares in Plaintiff's name, they remain inaccessible to Plaintiff and without commercial value.

60. Without a declaration from this Court that Defendant Twist reissue the 2017 Twist Investment in Plaintiff's name, Defendant Twist faces potential liability to Defendant Rise Huge, the record owner of the shares.

61. While Plaintiff is also a beneficial owner of the separate 2018 Twist Investment, Plaintiff does not presently seek a declaration concerning those shares as it relates to Ever Alpha and Rise Huge.

62. WHEREFORE, pursuant to 28 U.S. Code § 2201 and California Civil Code Section 1060 this Court should issue a declaratory judgment recognizing Plaintiff's ownership interest in the 2017 Twist Investment and directing Defendant Twist to re-issue those shares in Plaintiff's name.

# PRAYER FOR RELIEF

**WHEREFORE** Plaintiff prays for judgment against Defendants as follows:

1. Confirm the June 8, 2022, arbitration award against Defendant Rise Huge in its entirety, and specifically order that Plaintiff, not Defendant Rise Huge, is the true beneficial owner of the 2017 Twist Investment;

2. Issue a declaratory judgment recognizing Plaintiff's ownership interest in the 2017 Twist Investment and directing Defendant Twist to re-issue those shares in Plaintiff's name; and

3. Grant such other and further relief as this Court deems just and proper.

DATED: October 17, 2022

/s/ *Jean-Paul Ciardullo*
Jean-Paul Ciardullo
FOLEY & LARDNER LLP

Caleb Kruckenberg
CAPITOL LAW GROUP PLLC

*Counsel for Plaintiff*